930 F.2d 24
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Darrell D. DAVIS, Defendant-Appellant,
v.
UNITED STATES of America, Plaintiff-Appellee.
 No. 90-6097.
 United States Court of Appeals, Sixth Circuit.
 April 16, 1991.
 
 Before KRUPANSKY and BOGGS, Circuit Judges, and WOODS, District Judge*.
 PER CURIAM.
 
 
 1
 Defendant-appellant Darrell D. Davis has appealed from that part of the sentence imposed by the judgment entered, pursuant to a guilty plea, by the United States District Court for the Middle District of Tennessee, requiring restitution by the appellant to the bank to which he had submitted a financial statement containing false information in violation of 18 U.S.C. Sec. 1014.
 
 
 2
 The appellant was charged in a one-count information in the Western District of Kentucky for making false statements to the Bank of Clinton County in Monticello, Kentucky (the bank). He was accused of providing information, which he knew to be false, on a financial statement submitted to obtain a loan, in which he claimed to have a legal and equitable interest in three condominiums, when he did not. Because of similar pending cases, the case was transferred to the Middle District of Tennessee, where the appellant pleaded guilty after waiving indictment.[1]
 
 
 3
 On August 10, subsequent to a hearing, the court sentenced the appellant to four years probation, to commence at the conclusion of incarceration ordered in a companion case. He was also ordered to pay $15,000 restitution to the bank. The appellant filed a notice of appeal on August 17, 1990.
 
 
 4
 James T. Payton, Jr., president of the bank from July 1983 until August 1987, testified at the sentencing hearing that the bank, for an extended period of time prior to July 1987, had permitted the appellant to periodically overdraft his account, which was balanced with the bank the following month. Payton testified that he would periodically obtain financial statements from the appellant to justify the bank's action. During the period from January 1987 until July 1987, the appellant's account often fluctuated between negative and positive balances. On July 8, 1987, the appellant had a negative balance of $11,700.91. The appellant submitted the financial statement here in issue, which incorporated the false information, on July 24. On July 28, the appellant signed a note for $15,000 and deposited $11,000.00, and on July 31, he had a negative balance of $282.36.
 
 
 5
 Payton testified further that, before he voluntarily terminated his employment at the bank for a position at another bank during August 1987, he required the appellant to convert his overdraft into a loan. Apparently no loan application was submitted. He described the transaction as follows:
 
 
 6
 If I remember that transaction correctly ... I had been talking with Mr. Davis on and off and had allowed the overdraft prior to the loan. When it occurred to me Mr. Davis was not going to be able to cover the overdraft as he had previously and in an attempt to get an enforceable transaction, I asked him to come in and give me a new financial statement and sign a note.
 
 
 7
 Payton had previously testified as follows:
 
 
 8
 Q. And did you ever extend one dime to him [the appellant, Mr. Davis] based on a loan application or a financial statement that was dated in late July, 1987?
 
 
 9
 A. Not based on one in late July, 1987, no, sir.
 
 
 10
 Q. Would it be your testimony, Mr. Payton, that in July--July 27, 1987, Mr. Davis already had received all the money that he was going to receive from Clinton Bank?
 
 
 11
 A. That is my best recollection.
 
 
 12
 It is not clear whether the $11,000 deposited on July 28, only four days after the financial statement was submitted to the bank and the note for $15,000 was signed, was from the proceeds of the loan. Nor is it clear what happened to the balance of the $15,000. Although there was no direct testimony or other evidence in the record fixing the amount of the loan at $15,000, neither party has challenged that figure. Moreover, the record is notably short on other material factual details, including how the proceeds were transferred to the appellant's benefit, how the transfer affected the appellant's prior and subsequent account balances, and how the controversial transactions affected the position of the bank in relation to the prior overdrafts.
 
 
 13
 The district court failed to explain why it ordered restitution in the amount of $15,000. It is not possible from the record, without an explanation from the trial court, to determine the amount of the loss, if any, suffered by the bank as a result of any reliance it may have placed upon the false financial statement submitted by the appellant on July 28, 1987. Without further development of the record, and an indication of the rationale for the amount of the ordered restitution, this court is unable to meaningful review the sentence.
 
 
 14
 Accordingly, this case is REMANDED for a hearing and resentencing supported by findings of fact and conclusions of law.
 
 
 
 *
 The Honorable George E. Woods, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 The plea was entered pursuant to an agreement in which he also pleaded guilty to one of the three counts for which he was indicted in Tennessee. The crime occurred prior to the effective date of the sentencing guidelines, so the appellant was sentenced pursuant to pre-guidelines law